# Roe *v.* City of Tuscaloosa.

## *Violating Municipal Ordinance.*

(Decided December 17, 1914. 67 South. 845.)

1. *Trial; Directing Verdict.*—Where the evidence affords an inference that a defendant was guilty of violating an ordinance for the violation of which he was being prosecuted, the trial court could not be required to direct a verdict for the defendant.

2. *Municipal Corporation; Ordinance; Violation; Directing Verdict.*—Where a defendant being prosecuted for violating a municipal ordinance, declined to rest his case at the close of plaintiff's evidence, the court was under no duty to instruct affirmatively for him because the ordinance under which a conviction was sought had not been introduced in evidence, notwithstanding the court could not take judicial knowledge of the ordinance.

3. *Appeal and Error; Harmless Error; Evidence.*—Any error of the court in refusing to exclude testimony as to the commission of the offense before the introduction in evidence of the ordinance alleged to have been violated, was cured by the subsequent introduction of the ordinance.

4. *Same; Review; Discretion.*—It was within the sound discretion of the trial court to permit the introduction in evidence of an ordinance after proof had been made of the violation of such ordinance and the court's action thereon is not reviewable on appeal.

APPEAL from Tuscaloosa County Court.

Heard before Hon. FRED FITE, Special Judge.

Andrew Roe was convicted of violating a city ordinance, and he appeals. Affirmed.

The appellant was convicted under a complaint charging him with a violation of a city ordinance prohibiting the manufacture, sale, offering for sale, keeping or having in possession for sale, bartering, exchanging, or giving away or transporting, over or along a public street in the city of Tuscaloosa, or otherwise disposing of, prohibited liquors or beverages. The evidence was undisputed that the defendant sent a note by a negro girl by the name of Lula May Walton to a person in Bessemer named "George," who was connected with a saloon,

and that this person put two suit cases filled with whisky on a train to be watched by the negro girl, and that she watched the grips until they got to Tuscaloosa; that before the train arrived at Tuscaloosa, the defendant was at the station standing on the platform, and when the train stopped at the Alabama Great Southern station, which was within the city limits, and about 200 yards from the Mobile & Ohio crossing, he boarded the train; that he did not purchase a ticket, but had in his possession a regular monthly ticket from Tuscaloosa to Crabtree, a station a short distance below Tuscaloosa; that after boarding the train, he gave the conductor one of the coupons from his tickets, good from Tuscaloosa to Crabtree, but instead of going on to his destination, he got off at the Mobile & Ohio crossing, about 200 yards from the Alabama Great Southern station; that here another negro by the name of Snodgrass met the train, defendant took the two grips off and train and handed one of them to Snodgrass, taking the other in his hand; that both of these suit cases contained whisky, the one handed to Snodgrass 23 pint bottles of "Deep Spring Whisky," and the other contained 95 half-pint bottles of "Shaw's Malt Whisky." The defendant and Snodgrass were arrested with these two suit cases filled with the whisky in their possession. On the morning after the defendant and Snodgrass were arrested with this whisky in their possession, defendant stated to the chief of police that the whisky the police officers took from him and Snodgrass when they were arrested belonged to the defendant.

Defendant testified in his own behalf that he bought this whisky for his own use and paid $23 for it, and that he did not have it to sell or give away, or for an unlawful purpose. The evidence was further undisputed that the defendant was not a married man; that

when he was arrested, he was working for the Crabtree Lumber Company; that he drank whisky, but did not get drunk, and there was evidence tending to show the defendant's good character.

CLARKSON & MORRISETTE, for appellant. No brief reached the Reporter.

BROWN & WARD, for appellee. No brief reached the Reporter.

BROWN, J.—The complaint under which the defendant was tried charged several distinct offenses in the alternative, and the evidence was sufficient at least to afford an inference that the defendant had whisky in his possession for an unlawful purpose, as charged in the complaint, and in violation of the city ordinance — *Wynn v. State*, 11 Ala. App. 182, 65 South. 687; *Allison v. State*, 1 Ala. App. 206, 55 South. 453. There was therefore no error in refusing the affirmative charge requested by the defendant after the close of all the evidence.

If the defendant had rested his case on the testimony offered by the appellee in chief, he would clearly have been entitled to the affirmative charge, because up to that time the ordinance under which the prosecution was instituted had not been offered in evidence. The ordinance not being a matter of which the court could take judicial notice, its introduction was necessary to sustain the prosecution, but until the defendant rested his case, no duty rested on the trial court to consider the affirmative charge requested by him. In other words, the defendant could not insist on the affirmative charge and yet reserve the right to introduce proof in rebuttal of that offered by the prosecution, in the event the charge was refused. Under these circumstances, there

was no error in the action of the court in refusing to consider the giving of the affirmative charge requested by the defendant at this stage of the case. If there was error in the refusal of the court to exclude the testimony, this error was clearly cured by the subsequent introduction of the ordinance before the case was submitted to the jury.

It was within the sound discretion of the court to allow the plaintiff to introduce the city ordinance after the evidence was closed and some of the arguments had been made, and this court will not review this action of the trial court.

There was no error in the action of the court in overruling the appellant's objection to the testimony of the witness Lula May Walton.—*Bone v. State*, 8 Ala. App. 59, 62 South. 455.

We find no error in the record, and the judgment of the county court is affirmed.

Affirmed.